UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN FRITZ,

          Petitioner,

                                     Case No. 16-cv-10504

v.

                                     HON. MARK A. GOLDSMITH

SHERRY BURT,

          Respondent.

_____/

## OPINION & ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Marvin Fritz, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), challenging his Wayne County Circuit Court convictions for second-degree murder, Mich. Comp. Laws § 750.317; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, second offense, Mich. Comp. Laws § 750.227b.   Petitioner was sentenced to 22 ½ to 37 ½ years' imprisonment on the murder conviction, time served on the felon-in-possession conviction, and a consecutive term of five years' imprisonment on the felony-firearm conviction.   The petition raises claims of insufficient evidence and inconsistent verdict.   For the reasons set forth, the Court denies the petition, declines to issue a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

## I.  BACKGROUND

Petitioner's convictions arise from the shooting death of Deon Dudley following an

1

altercation in a neighborhood in Detroit, Michigan, on September 25, 2012.   The Michigan Court

of Appeals described the relevant facts, which are presumed correct on habeas review under 28

U.S.C. § 2254(e)(1).   See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> This case arises out of an incident that occurred on September 25, 2012 on Monterey Street in Detroit, Michigan.   A fight involving several persons broke out outside the home of Greg Wheeler, apparently following a request to borrow a cigarette.   Two of the combatants were the decedent, Deon Dudley, and defendant.   At one point, Dudley put defendant in a "choke hold."   Eventually, others broke up the fight between defendant and Dudley.   Tenisia Wolfe testified that she had to pull Dudley towards the car because he was still trying to fight defendant.   As Dudley walked towards the car, defendant yelled at him, "what are you running for, nigger? You scared?"   Dudley responded, "No. I ain't scared."   Then, Dudley took off his shirt, threw it on the grass, and started moving back towards defendant.   Wolfe again grabbed Dudley and dragged him to the vehicle.

> During the altercation, Wheeler went into his house and retrieved a handgun, which he handed to defendant as Dudley, his brother Bryant Dudley (Bryant), and Danyale Smith were getting into Smith's vehicle.   Defendant walked to the side of Smith's vehicle and shot Dudley.   Defendant and Wheeler grabbed Wolfe and began beating her with the gun.   Defendant also hit Smith in her face with the gun.   Wolfe believed that defendant was about to shoot Smith as well, until Smith's daughter started screaming, so defendant "shot the rest of the bullets out in the car," but did not hit anyone.

> Wolfe then observed Dudley in the back seat of the car, leaning on Bryant because he had been shot in the head.   Smith drove off with Wolfe, Dudley, and Bryant, and took Dudley to Henry Ford Hospital.   As they started to drive off, Wolfe observed defendant get into his truck and "zoom off."   Wolfe testified that she and Dudley had consumed a couple of beers at Toya Connely's house, but Smith, Connely, and Bryant were drinking gin from a bottle that was in Smith's vehicle.   Contrarily, Smith testified that she was not drinking, but Wolfe, Dudley, and Bryant were drinking either beer or gin.

> Dr. Leigh Hlavaty, Deputy Chief Medical Examiner at the Wayne County Medical Examiner's Office, performed an autopsy on Dudley on September 27, 2012.   She observed three gunshot

2

wounds to Dudley's body — "an entrance gunshot wound present lateral to the left eye, sort of right at the end of, of the brow.   There was an entrance, an exit gunshot wound on the back of the left calf.   And then there was a graze gunshot wound on the back of the right calf."   She recovered a bullet from the gunshot wound to the head, and also observed "stippling" from "gunpowder grains that strike the skin.   [The stippling] indicates that the muzzle of the weapon was in close proximity to the decedent's head."   Dr. Hlavaty also determined that Dudley had a blood alcohol level of 0.075.

People v. Fritz, No. 315951, 2014 WL 4160435, at *1 (Mich. Ct. App. Aug. 21, 2014) (per curiam).

Following his convictions and sentencing, Petitioner pursued an appeal of right with the Michigan Court of Appeals, raising the same claims presented on habeas review.   The court denied relief on his claims and affirmed his convictions and sentences.   Id. at *2-4.   Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.   People v. Fritz, 497 Mich. 982, 861 N.W.2d 33 (Mich. 2015).[1]

Petitioner thereafter filed his federal habeas petition, raising the following claims:

    i.    "The trial court clearly erred when it found that Marvin Fritz had the mens rea for second degree murder."

    ii.    "The trial court reached an impermissible inconsistent second degree murder verdict when it emphasized that the shooting occurred during a chaotic scene where Marvin Fritz was egged on by the complainants and suddenly given a gun."

Pet. at 21, 25 (cm/ecf pages).

---

[1] In October 2015, Petitioner filed a motion for relief from judgment with the state trial court (Dkt. 9-3), raising additional claims concerning the effectiveness of trial counsel for not seeking a voluntary manslaughter instruction, the effectiveness of appellate counsel for not seeking review for a lesser offense, and the inconsistent statement of witnesses.   The trial court denied the motion.   People v. Fritz, No. 12-010897-FC (Wayne Co. Cir. Ct. Dec. 21, 2015) (Dkt. 9-4).   During the pendency of these proceedings, Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied.   People v. Fritz, No. 333562 (Mich. Ct. App. Oct. 13, 2016).   It appears that the matter remains pending before the Michigan Supreme Court.

Respondent has filed an answer to the petition (Dkts. 7, 10), contending that it should be denied.

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v.

Cockrell, 537 U.S. 322, 340 (2003).   Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."   Renico v. Lett, 559 U.S. 766, 773 (2010).   A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."   Harrington v. Richter, 562 U.S. 86, 101 (2011).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   Id. at 102.   Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.   Id.   Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.   See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be."   Harrington, 562 U.S. at 102.   Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.   Id.   Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."   Id.   Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law."   Woodford v. Viscotti, 537 U.S. 19, 24 (2002).   Therefore, in order to obtain habeas relief in federal court, a

state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   Harrington, 131 S. Ct. at 786-787.

A state court's factual determinations are presumed correct on federal habeas review.   See 28 U.S.C. § 2254(e)(1).   A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence.   Id.; Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court."   Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.   ANALYSIS

#### A.  Claim One:   Insufficient Evidence

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of malice to support his second-degree murder conviction.   Respondent contends that this claim lacks merit.   The Court agrees with Respondent.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   In re Winship, 397 U.S. 358, 364 (1970).   The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Jackson v. Virginia, 443 U.S. 307, 319 (1979).   The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."   Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).

6

Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002).   Under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the fact finder at trial and the state court on appellate review — as long as those determinations are reasonable.   Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009).   "[I]t is the responsibility of the [fact-finder] — not the court — to decide what conclusions should be drawn from the evidence admitted at trial."   Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).   "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court."   Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).   Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."   Matthews, 319 F.3d at 788-789.

Under Michigan law, the elements of second-degree murder are:   (i) a death, (ii) caused by an act of the defendant, (iii) with malice, and (iv) without justification or excuse.   Mich. Comp. Laws § 750.317; People v. Goecke, 579 N.W.2d 868, 878 (Mich. 1998).   "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."   Goecke, 579 N.W.2d at 878.   Malice may be inferred from evidence that a defendant intentionally set in motion a force likely to cause death or great bodily harm.   People v. Djordjevic, 584 N.W.2d 610, 612 (Mich. Ct. App. 1998).   Malice may also be inferred from the use of a deadly weapon.   People v. Carines, 597 N.W.2d 130, 136 (Mich. 1999).   Direct or circumstantial evidence, along with reasonable inferences arising from that evidence, may constitute satisfactory proof of the elements of an offense.   People v. Jolly, 502 N.W.2d 177, 180 (Mich. 1993).

Relying upon the foregoing standards, the Michigan Court of Appeals considered this claim on direct appeal and denied relief.   The court explained in relevant part:

> Defendant, while ostensibly challenging the sufficiency of the evidence regarding the malice element of his second-degree murder conviction, in fact appears to argue that the evidence supported a conviction for voluntary manslaughter, not murder. Voluntary manslaughter, like murder, has as an essential element the intent to kill or commit serious bodily harm.   People v. Hess, 214 Mich App 33, 38; 543 NW2d 332 (1995).   Thus, it is unclear how defendant's argument concerning voluntary manslaughter relates to his claim of insufficient evidence of malice.   A conviction for voluntary manslaughter requires a finding that a defendant, although possessed with the intent to kill, killed in the heat of passion caused by adequate provocation.   People v. Tierney, 266 Mich App 687, 714; 703 NW2d 204 (2005).   Here, the evidence, taken in the light most favorable to the prosecution, shows that defendant was initially involved in a fight with decedent in which no weapons were used, but that the decedent and defendant had ceased fighting (and in fact the decedent was seated in a vehicle) before defendant shot him.   Such evidence does not support a finding that defendant was adequately provoked by virtue of being involved in mutual combat. See People v. Brown, 37 Mich App 565, 569; 195 NW2d 60 (1972); Brown v. Swartz Creek VFW, 214 Mich App 15, 23; 542 NW2d 588 (1995).
>
> Further, the prosecution did present sufficient evidence to prove, beyond a reasonable doubt, that defendant acted with malice.   This Court has held that malice can be "inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm."   People v. Roper, 286 Mich App 77, 84; 777 NW2d 483 (2009).   In Roper, this Court determined that sufficient evidence had been established that the defendant acted with malice because he "intentionally set in motion a force likely to cause death or great bodily harm," by picking up a knife, "brandishing it, and then stepping up and swinging at" the victim.   Id. at 85.   Similarly, defendant had a gun in his hand, intentionally walked to Smith's vehicle with the purpose of setting in motion a force that was likely to cause death or great bodily harm.   Defendant intentionally pointed the gun at Dudley, and shot him three times.   Moreover, the stippling around Dudley's head wound indicated that the shot was fired from close range, supporting an inference that it was done with the intent to cause serious bodily harm.   At the time of the shooting, Dudley had retreated back to Smith's vehicle and was sitting in the back seat as Smith was preparing to drive away.   Based on the

8

> evidence presented — that Dudley had retreated to and was in the
> car, and defendant intentionally walked up to the car with the
> purpose of shooting at Dudley — an inference could be properly
> drawn that defendant acted with malice.   Thus, defendant was
> properly convicted of second-degree murder.

Fritz, 2014 WL 4160435, at *2.

The state court's decision is neither contrary to Supreme Court precedent, nor is it an unreasonable application of federal law or the facts.   The prosecution presented sufficient evidence to establish Petitioner's guilt of second-degree murder through the witness testimony, which showed that after Deon Dudley, Bryant Dudley, and Danyale Smith had retreated to Smith's car and were preparing to leave the scene of the altercation, Petitioner obtained a gun from Greg Wheeler (who had retrieved it from his home), walked to Smith's car, pointed the gun at Deon Dudley (who was sitting in the backseat), and shot him three times with a shot to the head at close range.   Such testimony supports a finding that the shooting was done with the intent to kill, to cause serious bodily harm, or to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.   Such testimony also supports a finding that Petitioner acted without justification or excuse.   Because Dudley was in the backseat of the car and preparing to leave the scene, Petitioner was not in danger and had time to cool off and contemplate his actions.   Considered in a light favorable to the prosecution, the trial testimony was sufficient to show that Petitioner acted with sufficient malice to support his second-degree murder conviction.

Petitioner challenges the inferences that the trial court, sitting as the trier of fact, drew from the evidence at trial.   However, it is the job of the fact finder at trial, not a federal habeas court, to resolve evidentiary conflicts.   Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); Walker v. Engle, 703 F.2d 959, 969-970 (6th Cir. 1983) ("A federal habeas corpus

court faced with a record of historical facts that supports conflicting inferences must presume —
even if it does not affirmatively appear in the record — that the trier of fact resolved any such
conflicts in favor of the prosecution, and must defer to that resolution.").   Both the trial court's
verdict and the Michigan Court of Appeals' decision affirming that verdict were reasonable.   The
evidence at trial, viewed in a light favorable to the prosecution, established beyond a reasonable
doubt that Petitioner committed second-degree murder.   Habeas relief is not warranted on this
claim.

### B.  Claim Two:   Inconsistent Verdict

Petitioner also asserts that he is entitled to habeas relief because the second-degree murder
verdict was inconsistent with the trial court's factual findings.   Specifically, Petitioner contends
that the "trial court reached an impermissible inconsistent second degree murder verdict when it
emphasized that the shooting occurred during a chaotic scene where Marvin Fritz was egged on by
the complainants and suddenly given a gun."   Pet. at 25 (cm/ecf page).   Respondent contends
that this claim is not cognizable upon habeas review, and that it otherwise lacks merit.   Again, the
Court agrees with Respondent.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.
The court explained:

> A trial court's findings of fact may not be set aside unless they are
> clearly erroneous.   A ruling is clearly erroneous if the reviewing
> court is left with a definite and firm conviction that the trial court
> made a mistake.   A trial judge sitting as the finder of fact in a bench
> trial may not render a verdict that is inconsistent with his or her
> findings of fact.
>
> In stating its findings of fact for second-degree murder, the trial
> court stated, in relevant part:
>
>> And from all the testimony, the environment was just crazy
>> out there.   [Defendant] drove up crazy.   That's what we

10

heard.   Was not at the scene at first.   And that did we hear about, as weird as this might sound, about Gregory Wheeler?   Gregory Wheeler was described as the senior person there.   That when a person is older than everybody, we would like to think that they possess a little wisdom with that age.

* * *

I find that there is nobody else, but Mr. Fritz, who possessed that gun, whether you believe the witnesses, whether you believe the tape recordings that were made from the jail, it doesn't matter what theory you base it on, even the theory that was argued at the time of the closing by the defense.   It was all an admission that, okay. Mr. Fritz had the gun. Okay.   He shot Mr. Dudley.

* * *

Now, I imagine that it couldn't have been more chaotic than it was out there.   Nobody had a cool head.   Anybody have a cool head out there?   No.   Everybody was reacting to something that somebody else was reacting.   And when people react, what is the tendency?   To overact.

* * *

How could it be so out of control that everybody got up here and said he was acting crazy?   It was just nobody was thinking clearly.   And for first[-]degree murder to apply, it has to be deliberate.   It has to be premeditated.   You have to have time to reflect.   And it has to be real and substantial.

How many people are given a gun and can say:   Oh.   Okay. Let me think about what I'm supposed to do with this gun? Think about what was happening at the time that Mr. Fritz got that gun.   Nobody wanted to back down.   At least Mr. Dudley wasn't backing down.

And look how he acted after he used the gun.   He was so enraged that he and Mr. Wheeler going [sic] to beat an unarmed young lady on the hood of a car and then threaten somebody else, still not able to contain himself, until, as everybody heard, it was a child's voice that restored everybody's common sense.

The innocent voice of a child, I would say sent there specifically on that day by our Creator.   The innocent voice of a child that brought reason back, that restored everybody's focus.   And then everybody was left to deal

> with the damage.   There was no excuse or justification for
> any of this.
>
> I think that the People have shown beyond a reasonable
> doubt that at the time that Mr. Fritz shot [Dudley] that he
> intended to do great bodily harm less than the crime of
> murder.   And I'll find him guilty of murder in the second
> degree and felony[-]firearm at the time that he committed
> the murder of Mr. Dudley.
>
> A trial court that sits without a jury must make separate findings of
> fact and conclusions of law.   Here, the trial court made clear
> findings of fact.   Defendant incorrectly asserts, however, that these
> findings were inconsistent with defendant's conviction of
> second-degree murder.   Although the trial court acknowledged that
> the scene was "chaotic," it consistently held that there "was no
> excuse or justification" for defendant's actions.   The trial court
> determined that defendant shot Dudley, intending to do great bodily
> harm less than murder, as required for second-degree murder, and
> did so without excuse or justification.   Simply put, there is no
> indication that the trial court's findings were inconsistent with the
> second-degree murder verdict and the trial court did not clearly err
> in making its findings of fact.

Fritz, 2014 WL 4160435, at *3-4 (citations and quotation marks omitted) (emphasis added).

The state court's decision is neither contrary to Supreme Court precedent, nor is it an unreasonable application of federal law or the facts.   Michigan law requires a trial court conducting a bench trial to make specific findings of fact and conclusions of law.   See Mich. Ct. R. 2.517(A)(1).   A federal court, however, may grant an application for writ of habeas corpus only on the ground that a petitioner is in custody in violation of the Constitution, laws, or treaties of the United States.   See 28 U.S.C. § 2254(a).   To the extent that Petitioner's challenges to the trial court's factual findings and conclusions are based on state law, they are not cognizable on habeas review.   See Pulley v. Harris, 465 U.S. 37, 41 (1984); Harris v. Booker, 251 F. App'x 319, 323

(6th Cir. 2007) (affirming denial of habeas relief on similar claim).[2]   State courts are the final arbiters of state law and federal courts will not intervene in such matters.   Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987).   Habeas relief does not lie for perceived errors of state law.   Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Furthermore, the Supreme Court has ruled that inconsistency in a verdict is an insufficient reason to set a verdict aside.   Harris v. Rivera, 454 U.S. 339, 345 (1981).   Such is the case because an inconsistent verdict may favor a criminal defendant as well as a prosecutor.   United States v. Powell, 469 U.S. 57, 65 (1984).   "The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."   Id. at 66.   Additionally, "inconsistent verdicts rendered by a judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury."   United States v. Chilingirian, 280 F.3d 704, 711 (6th Cir. 2002).   Therefore, Petitioner fails to state a claim upon which habeas relief may be granted as to this issue.

Last, the Court finds that even if Petitioner states a valid habeas claim, he fails to establish entitlement to relief.   The trial court's factual findings that the parties were upset during the altercation and that the scene was chaotic is not inconsistent with the trial court's second-degree murder verdict.   As discussed supra, the record indicates that Deon Dudley and his cohorts had returned to their car and were preparing to leave when Petitioner, armed with a gun, walked to the car, pointed the gun at Dudley as he sat in the back seat, and shot Dudley three times to his head at close range.   Such facts were sufficient to support the trial court's determination that Petitioner

---

[2] To the extent that Petitioner's challenges the trial court's factual findings and conclusions based on any purported violation of federal due process, the claim lacks merit.   See Wofford v. Straub, 27 F. App'x 517, 520 (6th Cir. 2001) (noting absence of Supreme Court authority establishing that federal due process requires a trial court, sitting as a trier of fact in a criminal trial, to make specific findings as to each element of a crime); Westbrook v. Curtin, No. 11-13293, 2015 WL 4199206, *5 (E.D. Mich. July 13, 2015) (same).

acted with the requisite intent to support his second-degree murder conviction.   Habeas relief is not warranted on this claim.

### C.  Certificate of Appealability and Leave to Proceed In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.   See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).   "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   Miller-El, 537 U.S. at 327.   In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.   Id. at 336-337.   "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition should be denied.   Accordingly, a certificate of appealability is not warranted in this case.

The Court also denies Petitioner leave to appeal in forma pauperis, because any appeal would be frivolous and not in good faith.   See, e.g., Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002); Fed. R. App. P. 24(a).

## IV.   CONCLUSION

For the reasons stated above, the Court denies the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and denies leave to proceed in forma pauperis on appeal.

SO ORDERED.

Dated:   July 28, 2017                                     s/Mark A. Goldsmith
       Detroit, Michigan                          MARK A. GOLDSMITH
                                          United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 28, 2017.

                                            s/Karri Sandusky
                                            Case Manager